ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
ROYE ZUR, State Bar No. 273875
  *rzur@elkinskalt.com*
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400
Facsimile: 310.746.4499

Attorneys for Secured Creditor Howard B. Grobstein, Plan Trustee for the Plan Trust of Catherine Trinh

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>ORLANDO F. CABANDAY,<br><br>    Debtor. | Case No. 2:24-bk-10037-NB<br><br>Chapter 11<br><br>**OPPOSITION TO MOTION FOR AUTHORITY TO USE CASH COLLATERAL ON A FINAL BASIS**<br><br>Date:    May 7, 2024<br>Time:    1:00 p.m.<br>Crtrm.:   1545<br>         255 E. Temple St.<br>         Los Angeles, CA 90012<br><br>Judge:   Neil W. Bason |

5339339.5

OPPOSITION TO MOTION FOR AUTHORITY TO USE CASH COLLATERAL ON A FINAL BASIS

Secured creditor Howard B. Grobstein (the "Plan Trustee"), the plan trustee for the post-confirmation plan trust of Catherine Trinh (debtor in Chapter 11 Case No. 2:18-bk-11475-RK), hereby submits this Opposition to the *Motion for Authority to Use Cash Collateral on a Final Basis* [Docket No. 55] filed by Orlando F. Cabanday (the "Debtor") as follows.

## I. STATEMENT OF FACTS

### A. General Background

On February 9, 2018, Ms. Trinh filed a voluntary Chapter 11 bankruptcy petition, commencing Case No. 2:18-bk-11475-RK, which was assigned to the Honorable Robert Kwan. On January 28, 2021, the Court entered an order confirming Ms. Trinh's Chapter 11 plan. Pursuant to the plan and the confirmation order, Mr. Grobstein was appointed as the Plan Trustee for the Plan Trust created on the effective date of that plan.

### B. The Plan Trustee's Lien

Prior to Ms. Trinh's bankruptcy filing, she and others were defendants in a state court lawsuit commenced by Second Generation, Inc., in a case entitled *Second Generation, Inc. v. Kody Branch of California et al.,* LASC Case No. BC609405. Ms. Trinh and the other defendants were represented by the Debtor. Ultimately, the state court entered judgment against Ms. Trinh in excess of $3.4 million.

Thereafter, Ms. Trinh sued the Debtor for malpractice in connection with the aforementioned judgment, commencing the case entitled *Kody Branch of California, Inc., et al. v. Cabanday*, LASC Case No. 18STCV07677. ON November 13, 2020, the state court entered judgment in favor of Ms. Trinh and against the Debtor in the amount of $3,438,405. The Debtor appealed the judgment, but his appeal was subsequently dismissed. As such, it is now final.

The confirmed plan in Ms. Trinh's Chapter 11 case transferred substantially all of Ms. Trinh's non-exempt assets to the Plan Trustee, among them the judgment against the Debtor. On September 27, 2023, the Plan Trustee filed a notice of judgment lien with the California Secretary of State. That filing created a lien on certain of the Debtor's personal property pursuant to section

/ / /
/ / /

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

697.530 of the California Code of Civil Procedure.[1]

## II. ARGUMENT

### A. The Plan Trustee's Lien on the Debtor's "Accounts Receivable" Covers All of the Debtor's Pending Cases, Not Only Those on Which the Debtor Has Earned a Fee

As a threshold matter, it is necessary for the Court to determine the collateral covered by the Plan Trustee's lien. As the Debtor acknowledges, the Plan Trustee has a perfected and unavoidable lien in certain personal property, including "accounts receivable," pursuant to California Code of Civil Procedure section 697.530. Despite that the Debtor has multiple contingency matters in which the Debtor is seeking millions of dollars on behalf of his clients, the Debtor appears to contend – and his contention appears to form the basis for the Motion – that the collateral securing the Plan Trustee's claim is limited to amounts actually recovered by the Debtor (through settlement or trial). Indeed, in his proposed plan, the Debtor states that the Plan Trustee's "secured claim will be approximately $150,000 as the Debtor believes that the amount of the receivables owing at the Effective Date will be approximately $150,000 based on the projected receivables being between $100,000 and $200,000 from the settlements and trial . . . ." [*See* Docket No. 54, at 16:6-9.] The Debtor is wrong.

Contrary to the Debtor's assertion, the Plan Trustee has a lien not only on earned fees, but also on the Debtor's financial expectancy from all of his pending cases, including work in progress (*i.e.*, fees not yet earned). The term "account receivable" adopts the meaning of the term "account" in the California Commercial Code. That term, in turn, is defined as a "right to payment of a monetary obligation, whether or not earned by performance . . . for services rendered or to be rendered." Cal. Civ. Proc. Code § 680.130; Cal. Com. Code § 9102(a)(2)(ii). The definition of "account" makes clear that it includes a right to payment regardless of whether the services giving

---

[1] Section 697.530 of the California Code of Civil Procedure provides that a judgment lien on personal property is a lien on the debtor's interests in the following categories of property: (1) accounts receivable, (2) tangible chattel paper, (3) equipment, (4) farm products, (5) inventory, and (6) negotiable documents of title. *See* Cal. Civ. Proc. Code § 697.530(a). The Debtor and the Plan Trustee agree that the most relevant of these categories is "accounts receivable."

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400 • Facsimile: 310.746.4499

5339339.5

3

OPPOSITION TO MOTION FOR AUTHORITY TO USE CASH COLLATERAL ON A FINAL BASIS

rise to that right to payment have been rendered. Indeed, "[n]o distinction is made [in the definition of "account"] between a right to payment that has been earned by performance and one as to which payment is not yet due because the condition precedent to the right to payment has not been satisfied." *Motu Novu, LLC v. Percival*, 2017 WL 7243462, at *3 n.7 (N.D. Cal. Dec. 1, 2017).

"The proper Article 9 characterization of interests like the ones at issue in this case has not been frequently litigated, <u>as in most instances the parties do not dispute that legal fees, both earned and unearned</u>, are properly characterized as "accounts" or "accounts receivable." *U.S. Claims, Inc. v. Flomenhaft & Cannata, LLC*, 519 F. Supp. 2d 515, 521 (E.D. Pa. 2006) (emphasis added). However, courts encountering the issue of whether a secured party's lien on "accounts receivable" of a law firm includes unearned fees in addition to earned fees uniformly hold that it does. *See*, *e.g.*, *id.*; *Cadle Co. v. Schlichtmann*, 267 F.3d 14, 18 (1st Cir. 2001), *cert. denied*, 535 U.S. 1018 (2002) (where law firm gave bank security interest in anticipated fees for particular case, court deemed the contingency fee agreement to be part of the firm's "accounts receivable"); *In re Holstein Mack & Klein*, 232 F.3d 611, 612 (7th Cir. 2000) (concluding that security interest in law firm's "receivables" included legal fees to be earned from personal injury and class action suits by law firm); *Granata v. Broderick*, 143 A.3d 309, 325 (N.J. Super. Ct. App. Div. 2016) (holding that "an attorney's pledge of anticipated counsel fees can be considered an account receivable and secured under Article 9"); *PNC Bank v. Berg*, 1997 WL 527978, *9 (Del. Super. Ct. Jan.31, 1997) (holding that an unmatured contingency fee contract is an "account" under Article 9 of the UCC).

In sum, the Plan Trustee holds a lien on all of the Debtor's "accounts receivable," which include not only contingency cases in which the Debtor has earned a fee (from settlement or after trial), but also all pending contingency cases in which the Debtor has not yet earned a fee (but from which he still has a financial expectancy).

**B.     The Debtor Cannot Make Adequate Protection Payments Using Only the Plan Trustee's Cash Collateral**

Section 363 of the Bankruptcy Code defines "cash collateral" to include all cash, rents and proceeds of collateral. 11 U.S.C. § 363(a). The Bankruptcy Code is clear that a debtor-in-possession "may not use, sell, or lease cash collateral under [section 363(b)(1)] unless – (A) each entity that

has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale or lease in accordance with the provisions of [section 363]." 11 U.S.C. § 363(c)(2); *Scottsdale Med. Pavilion v. Mut. Benefit Life Ins. Co. In Rhab. (In re Scottsdale Med. Pavilion)*, 159 B.R. 295, 302 (9th Cir. BAP 1993) ("That subsection requires either consent by the creditor to the use of its cash collateral, or a court order authorizing its use."). Moreover, the Bankruptcy Code directs that a debtor-in-possession "shall segregate and account for any cash collateral in the [debtor's] possession, custody, or control." 11 U.S.C. § 363(c)(4).

The Plan Trustee has demonstrated its uncontested interest in the cash collateral and, therefore, has met his initial burden of demonstrating the validity, priority or extent of his interest. 11 U.S.C. § 363(p)(2). Once this burden is met, the Debtor bears the burden of proof on the issue of adequate protection. 11 U.S.C. § 363(p)(1). 11 U.S.C. § 363(p)(1) ("[T]he [debtor in possession] has the burden of proof on the issue of adequate protection . . . ."); *In re Swedeland Dev. Grp.*, 16 F.3d 552, 564 (3d Cir. 1994).

Section 361 of the Bankruptcy Code provides an illustrative list of what may qualify as adequate protection. That section recognizes that, to the extent that use of cash collateral "results in a decrease in the value of such entity's interest in such property," adequate protection may consist of cash payments or replacement liens. 11 U.S.C. § 361(1)-(2). The estate also may provide other forms of adequate protection so long as they "will result in the realization by [the secured party] of the indubitable equivalent of such entity's interest in such property." 11 U.S.C. § 361(3). The general purpose of adequate protection is to ensure that the secured creditor receives wht it would have received absent a bankruptcy. Protection is deemed "adequate" if the secured creditor's interests are preserved at "status quo" or are protected from disspitation by cash payments, replacement liens, or the like. *In re Triplett*, 87 B.R. 25 (Bankr. W.D. Tex. 1987). Adequate protection "should [therefore] as nearly as possible under the circumstances of the case provide the creditor with the value of his bargained for rights." *Swedeland*, 16 F.3d at 564 (citing *In re Martin*, 761 F.2d 472, 476 (8th Cir. 1985)); *In re Am. Mariner Indus., Inc.*, 734 F.2d 426, 435 (9th Cir. 1984).

///

In granting the Debtor's initial cash collateral motion on an interim basis, the Court expressly conditioned the use of cash collateral on the granting of replacement liens to the same extent as the Plan Trustee's pre-petition lien. [*See* Docket No. 40, ¶ 5, and Ex. A, ¶ 3.] Despite this, the Debtor does not propose to grant the Plan Trustee any replacement liens, and instead offers only to pay the Plan Trustee $5,000 per month in "adequate protection." The problem with the Debtor's offer is that the payments will be made from the Plan Trustee's own cash collateral, which courts have made clear is not, standing on its own, a sufficient form of adequate protection. *See In re Pac. Lifestyle Homes, Inc.*, 2009 WL 688908, at *11 (Bankr. W.D. Wash. Mar. 16, 2009) ("The Lenders argue that the 'adequate protection' offered by the Debtor is not adequate to protect them from erosion in the value of their collateral. First, although the Debtor promises to pay interest at the contract non-default rate, it would pay the interest amount from the sales proceeds it is already withholding from the Lenders and in which the Lenders already have a secured interest. . . . The Court primarily agrees with the Lenders' position. The Debtor has pointed to no possible additional source from which it could make cash payments, other than from the sales proceeds upon which the Lenders already hold first liens."); *In re Mosello*, 195 B.R. 277, 288 (Bankr. S.D.N.Y. 1996) ("There is no possible source from which the debtors could make a 'cash payment or periodic cash payments', other than from the sale of lots upon which Acquvest already holds [a] first lien . . . .").

At the very least, the Debtor should provide the Plan Trustee with replacement liens on property that is not already encumbered by the Plan Trustee's lien – *e.g.*, new contingency matters. This is not only necessary to provide the Plan Trustee with the adequate protection to which he is entitled, but also would be consistent with the Court's interim cash collateral order, which included a granting of replacement liens. [*See* Docket No. 40, ¶ 5, and Ex. A, ¶ 3.]

### C.    **The Proposed Adequate Protection Payments Are Insufficient**

The monthly $5,000 "adequate protection" payments proposed by the Debtor also are insufficient to protect against the diminution in the value of the Plan Trustee's collateral. While the actual value of the entirety of the collateral securing the Plan Trustee's lien – *i.e.*, all pending cases from which the Debtor has a financial expectancy – is not known, the value of the Plan Trustee's cash collateral clearly is not protected by these payments.

A review of the Debtor's budget reveals a sharp decline of approximately 40% in the Debtor's projected cash from $205,960 to $119,570, without replacement of that portion of the Plan Trustee's collateral. Indeed, the Debtor's own budget projects that he will earn $0 in July and August 2024, but that he will spend over $86,000 on various expenses during that same timeframe. No protection is offered to the Plan Trustee to offset this clear diminution in the value of his cash collateral. Clearly, purported "adequate protection" payments of $10,000 during that timeframe – without more – are insufficient.

### III. CONCLUSION

For all of the foregoing reasons, the Plan Trustee requests that the Motion be denied or, in the alternative, that any order approving the use of cash collateral be conditioned on the Debtor's provision of adequate protection, as specified in this Opposition.

DATED:  April 23, 2024

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP

By: _____
ROYE ZUR
Attorneys for Secured Creditor Howard B. Grobstein, Plan Trustee for the Plan Trust of Catherine Trinh

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is 10345 W. Olympic Blvd., Los Angeles, CA 90064.

A true and correct copy of the foregoing document entitled (*specify*): **OPPOSITION TO MOTION FOR AUTHORITY TO USE CASH COLLATERAL ON A FINAL BASIS** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) April 23, 2024 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page.

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 23, 2024 | Tahmineh Parizad Tamerani | */s/ Tahmineh Parizad Tamerani* |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012    **F 9013-3.1.PROOF.SERVICE**

**ADDITIONAL SERVICE INFORMATION (if needed):**

**1. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**

**Chad L Butler**    caecf@tblaw.com
**Todd S. Garan**    ch11ecf@aldridgepite.com, TSG@ecf.inforuptcy.com;tgaran@aldridgepite.com
**Dare Law**    dare.law@usdoj.gov
**Roksana D. Moradi-Brovia**    Roksana@rhmfirm.com, matt@rhmfirm.com;rosario@rhmfirm.com;sloan@rhmfirm.com;priscilla@rhmfirm.com;rebeca@rhmfirm.com;david@rhmfirm.com;susie@rhmfirm.com;max@rhmfirm.com;russ@rhmfirm.com
**Matthew D. Resnik**    Matt@rhmfirm.com, roksana@rhmfirm.com;rosario@rhmfirm.com;sloan@rhmfirm.com;priscilla@rhmfirm.com;rebeca@rhmfirm.com;david@rhmfirm.com;susie@rhmfirm.com;max@rhmfirm.com;russ@rhmfirm.com
**Mark M Sharf (TR)**    mark@sharflaw.com, C188@ecfcbis.com;sharf1000@gmail.com;2180473420@filings.docketbird.com
**United States Trustee (LA)**    ustpregion16.la.ecf@usdoj.gov
**Roye Zur**    rzur@elkinskalt.com, TParizad@elkinskalt.com;lwageman@elkinskalt.com;1648609420@filings.docketbird.com

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*    **F 9013-3.1.PROOF.SERVICE**